UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

DAMEION DOUGLAS,

Plaintiff,

v.

MULTNOMAH COUNTY PROSECUTOR
DONALD REESE AND/OR JOHN DOE
MULTNOMAH COUNTY COURT CLERK
AND/OR JOHN DOE

Defendants.

Case No. 6:16-cv-00048-AA

OPINION AND ORDER

AIKEN, District Judge:

Plaintiff, an inmate at Oregon State Penitentiary, brings this action pursuant to 42 U.S.C. § 1983 and alleges violations of his constitutional rights arising from defendants' refusal to produce evidence logs during plaintiff's post-conviction proceedings. Defendants move to dismiss on grounds that plaintiff's claims implicate the validity of his criminal convictions and cannot be brought in a § 1983 action. For the reasons explained below, defendant's motion is granted.

1   - OPINION AND ORDER

## DISCUSSION

After being convicted of burglary, kidnapping, robbery, felon in possession of a firearm, and unauthorized use of a vehicle, plaintiff was sentenced to 320 months' imprisonment. Plaintiff remains confined pursuant to those convictions.

In this action, plaintiff alleges that during his state post-conviction proceedings, Multnomah County prosecutor Rees or an unidentified Multnomah County administrator refused to produce chain-of-custody records related to a cap plaintiff allegedly wore during his crimes. Sec. Am. Compl. at 7 (ECF No. 11).[1] Plaintiff contends that defendants' refusal to provide the custody records violated his Fourteenth Amendment "Right to Access Evidence" and his First and Fourteenth Amendment right to "Access the Court." *Id.* at 25-41 (Claims 1-6).[2] Plaintiff seeks damages in the amount of $2,000,000.

The crux of plaintiff's claims is the contention that his cap was physically altered to look like a mask while in State custody during his criminal proceedings. At plaintiff's trial, a law enforcement officer testified that plaintiff's cap had mouth and eye holes cut into it, like a mask, when it was first seized. However, a forensic expert later testified that the cap did not have mouth and eye holes when she examined it, and that she took four smaller cuttings from the cap

---

[1] Plaintiff filed his Second Amended Complaint on May 23, 2017, after defendants moved for dismissal on May 17, 2017. Plaintiff had already amended his complaint and did not seek leave to amend. *See* Fed. R. Civ. P. 15(a). Nonetheless, defendants did not expressly object to plaintiff's second amended complaint, and its substance is virtually identical to his first amended complaint. While plaintiff added Claims 3 and 6, those claims allege no new facts or constitutional violations. The most notable difference is the deletion of plaintiff's prayer for injunctive relief requiring defendants to produce chain-of-custody records.

[2] Plaintiff also alleges that defendants violated the "Seizure Component" of the Fourth Amendment. Sec. Am. Comp. at 42 (Claim 7). Plaintiff does not allege a cognizable Fourth Amendment claim of unreasonable seizure arising from the failure to produce custody logs.

2 - OPINION AND ORDER

for DNA analysis. Plaintiff maintains that Rees did not take measures to correct the officer's testimony, knowing that it was incorrect or false.

During his post-conviction relief (PCR) proceedings in 2013 and 2014, plaintiff sought to obtain the cap and any relevant custody logs "in order to prove several newly discovered evidence claims of prosecutorial misconduct" arising from the alteration of his cap and Rees's failure to disclose the alteration. Sec. Am. Compl. at 6. The State produced custody logs for the the cap until 2002 but it was unable to locate the cap. Eventually, the State informed plaintiff's PCR counsel that the cap likely had been destroyed. *Id.* at 8.

Plaintiff alleges that Rees's refusal to produce post-2002 custody logs for the cap prevented plaintiff from establishing a viable *Brady* claim in his PCR proceedings. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (requiring the disclosure of favorable, material evidence to an accused). Specifically, plaintiff alleges that

> defendants['] refusal to give me their true and accurate Chain of Custody Records after 2002 has caused me to suffer actual injury and has prejudiced me because I could not name the state agency and agent who had Custody of my cap when it mysteriously disappeared, therefore, I could not raise any lost or destruction of evidence claims during my 2014 post-conviction trial.

Sec. Am. Compl. at 10. Plaintiff contends that he now needs the custody logs to determine which agency had custody of the cap after his trial to support a potential *Brady* claim.

Defendants move for dismissal on grounds that plaintiff's claims necessarily implicate the validity of his convictions and must be dismissed under the *Heck* doctrine. *See Heck v. Humphrey*, 512 U.S. 477 (1994). Under *Heck* and its progeny, "a prisoner in state custody cannot use a § 1983 action to challenge 'the fact or duration of his confinement'" unless the conviction or sentence has been reversed or otherwise invalidated. *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005) (citing cases); *Heck*, 512 U.S. at 486-87. More specifically, "a state prisoner's § 1983

3   - OPINION AND ORDER

action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Id.* at 81-82. Generally, a § 1983 claim under *Brady* implicates confinement and is subject to the *Heck* rule. *See Skinnder v. Switzer*, 131 S. Ct. 1289, 1300 (2011) ("*Brady* claims have ranked within the traditional core of habeas corpus and outside the province of § 1983."). Defendants maintain that a ruling in plaintiff's favor, based on defendants' failure to disclose favorable evidence under *Brady*, would necessarily place in question the validity of plaintiff's convictions.

In response, plaintiff argues that his claims are not barred by *Heck* because success on his claims "would only guarantee access to evidence the results of which are not known" and he "would still have to file a separate action in a separate Court to get any relief." Pl.'s Response at 8 (ECF No. 22). Plaintiff emphasizes that he is "arguing that success in my case would only yield access to evidence, (i.e chain of custody records), nothing more." *Id.* at 8. Plaintiff maintains that he cannot raise a *Brady* claim against the State for tampering with evidence without access to the custody records to determine what agency or department possessed the cap when it disappeared. *Id.* at 6. Accordingly, plaintiff files this § 1983 action only to obtain evidence that *could* enable him to challenge his convictions. *Id.* at 7-9.[3]

Plaintiff's claims are premised on his asserted Fourteenth Amendment "right to access evidence." However, the right claimed by plaintiff derives from *Brady* and the State's duty to disclose "favorable" evidence to a criminal defendant "where the evidence is material" to guilt or innocence. *Brady*, 373 U.S. at 87. Under *Brady*, evidence is material "if there is a reasonable

---

[3] Plaintiff has apparently abandoned his request for damages and now seeks only an injunction ordering the production of custody records.

probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

If this Court found that plaintiff's constitutional right to "access" *Brady* evidence had been violated and granted the injunctive relief requested, that finding would necessarily implicate the fact of his convictions. Plaintiff possesses no constitutional right to production of the custody records independent of the right established in *Brady*. *Fox v. Cty. of Tulare*, 672 Fed. App'x 767, 768 (9th Cir. 2017) ("The district court correctly concluded that there was no specific procedural due process right to access evidence."); *Thames v. Los Angeles Police Dep't*, 2008 WL 2641361, at *4 (C.D. Cal. June 30, 2008) (finding that plaintiff had no due process right to access police investigative records absent showing that the records were favorable and material under *Brady*). Thus, in order to grant the injunctive relief requested by plaintiff, I must find that favorable evidence *material* to plaintiff's guilt or innocence – evidence that likely would have resulted in a different outcome and required post-conviction relief – was not disclosed to him in violation of *Brady*. Consequently, even if plaintiff seeks only the production of chain-of-custody records, his claims run afoul of *Heck*.

Plaintiff nevertheless argues that his claims may proceed pursuant to the Supreme Court's decisions in *Skinner v. Switzer*, 562 U.S. 521 (2011) and *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52 (2009).

In *Skinner*, the Supreme Court held that *Heck* did not bar a § 1983 claim challenging a state's post-conviction procedures for DNA testing. *Skinner*, 562 U.S. at 534. Notably, the Court limited its ruling to DNA evidence and expressly held that it does not apply to *Brady* claims. "Unlike DNA testing, which may yield exculpatory, incriminating, or inconclusive results, a

5 - OPINION AND ORDER

*Brady* claim, when successful post-conviction, necessarily yields evidence undermining a conviction: *Brady* evidence is, by definition, always favorable to the defendant and material to his guilt or punishment." *Id.* at 536. Even so, the Court emphasized that "a state-court decision [to deny post-conviction DNA testing] is not reviewable by lower federal courts, but a *statute or rule governing the decision* may be challenged in a federal action." *Id.* at 533 (emphasis added); *see also Martinez v. Dist. Attorney of San Joaquin Cty.*, 2012 WL 1574818, at *3 (E.D. Cal. May 3, 2012) (finding that the plaintiff was precluded from challenging a state court decision denying DNA testing in a § 1983 action). In other words, *Skinner* permits a due process challenge to a statute or procedural rule governing post-conviction DNA testing; it does not allow a due process challenge based on a prosecutor's alleged *Brady* violation. *See Cooper v. Ramos,* 704 F.3d 772, 784-85 (9th Cir. 2012) (distinguishing claims "that attack the integrity of the investigation and trial" from claims challenging DNA testing for purposes of *Heck*).

*Osborne* similarly involved a § 1983 claim challenging the denial of post-conviction DNA testing. 557 U.S. at 65-69. Notably, the Court rejected the notion that the duty to disclose *Brady* evidence at trial extended to conviction proceedings. The Court explained, "Osborne's right to due process is not parallel to a trial right, but rather must be analyzed in light of the fact that he has already been found guilty at a fair trial, and has only a limited interest in postconviction relief. *Brady* is the wrong framework." *Id.* 68-69. "Instead, the question is whether consideration of Osborne's claim within the framework of the State's procedures for postconviction relief offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental, or transgresses any recognized principle of fundamental fairness in operation." *Id.* at 69 (internal quotation marks and citations omitted).

In sum, neither *Skinner* nor *Osborne* permits a due process challenge based on an alleged post-conviction *Brady* violation. Rather, for *Skinner* and *Osborne* to apply, a plaintiff must raise a due process challenge to the post-conviction *procedures* applicable to the discovery of evidence. Plaintiff does not challenge the PCR procedures that governed his efforts to seek his cap or the relevant custody logs; plaintiff challenges defendants' alleged refusal to provide him with custody logs. Accordingly, neither *Skinner* nor *Osborne* support plaintiff's argument.

Moreover, "Federal courts may upset a State's post-conviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided." *Osborne*, 557 U.S. at 69. Here, plaintiff's own allegations demonstrate that he received sufficient due process during his PCR proceedings. In his pleadings, plaintiff explains that his PCR counsel and an investigator both made substantial efforts to locate his cap and the relevant custody records. Sec. Am. Compl. at 6. Ultimately, the Multnomah County District Attorney's office cooperated and informed plaintiff's counsel that the cap likely had been destroyed sometime after plaintiff's criminal proceeding. *Id.* at 8. While it is regrettable and unfortunate that plaintiff's cap was lost or destroyed after his trial, that fact alone does not establish the inadequacy of plaintiff's PCR proceedings or a violation of his due process rights.

## CONCLUSION

For the reasons set forth above, defendants' Motions to Dismiss (ECF Nos. 10, 12) are GRANTED, and this case is DISMISSED.

DATED this 27 day of March, 2018.

Ann Aiken
United States District Judge

7 - OPINION AND ORDER